STATE OF MINNESOTA  
COUNTY OF RAMSEY

ss.   AFFIDAVIT OF JOHN D. STANLEY

Case No. 22-mj-85 (HB)

John D. Stanley, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) in Pembina, North Dakota, and have been so employed since December 2003. I am currently assigned to the Resident Agent office, Pembina, North Dakota. During my career as a Special Agent, I have conducted document and benefit fraud related investigations, child pornography investigations, and human trafficking investigations; sworn to and executed search and arrest warrants; conducted surveillance; and arrested individuals for violations of federal laws.

2. I am authorized to investigate violations of the Immigration and Nationality Act (INA), as well as offenses found in Titles 8, 42, and 18 of the United States Code.

3. This Affidavit is submitted for the limited purpose of establishing probable cause in support of the attached complaint and arrest warrant, and therefore contains only a summary of the relevant facts. I have not included each and every fact known by me concerning the individuals and events described herein. The information contained in this Affidavit is based on my

1

firsthand knowledge, review of records, and information provided by other law enforcement officers and witnesses.

4. Based upon all the facts and information set forth in this Affidavit, I believe that probable cause exists to support that, on or about January 19, 2022, in the State and District of Minnesota, Steve SHAND, knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported, and moved or attempted to transport and move such alien, to wit: S.P. and Y.P. within the United States by means of transportation or otherwise, in furtherance of such violation of law, all in violation of Title 8, United States Code, Section 1324(A)(1)(a)(ii). This section of the United States Code is titled "Bringing in and Harboring Certain Aliens."

5. On January 19, 2022, I responded to a request for assistance from Border Patrol Agent (BPA) Kevin Backes with the U.S. Border Patrol in Pembina, North Dakota. BPA Backes told me that Steve SHAND, a suspected smuggler of undocumented foreign nationals, had been arrested near the U.S./Canadian border earlier in the day for transporting two Indian nationals who were illegally present in the United States. BPA Backes also told me that a group of five Indian nationals illegally present in the United States were also identified and arrested near the time and place of SHAND's arrest. Six of the

seven arrested foreign nationals were present at the Pembina Border Patrol station. One of the foreign nationals was hospitalized for cold injuries.

6. Upon responding to the Border Patrol station in Pembina, I observed that SHAND had been driving a white-colored fifteen-passenger van with Missouri license plates. The van contained plastic cups, cases of bottled water, bottled juice, and snacks located in the extreme rear of the van—behind the last seat. Two sales receipts from Walmart in Fargo, North Dakota were found with the drinks and snacks and were both dated January 18, 2022. The receipts listed the drinks and snacks found in the van, indicating they were related to their purchase.

7. BPA Backes showed me three other documents that had been found in the van driven by SHAND. The first document was a rental agreement for the van from Enterprise Rent-a-Car located at the Minneapolis/St. Paul International Airport (MSP) dated January 17, 2022. The due date for return of the van to Enterprise was January 20, 2022. The Enterprise agreement was in SHAND's name and indicated he resided in Deltona, Florida. The second document was a rental agreement for a "full size passenger van" from Alamo Rent-a-Car at MSP dated January 10, 2022. The due date for return of the passenger van was January 13, 2022. The Alamo agreement was also in SHAND's name and indicated he was from Deltona, Florida. The third document was a room rental receipt from the hotel La

Quinta by Wyndham in Grand Forks, North Dakota, dated January 11, 2022. The receipt was in SHAND's name and gave his address as XXXX Vienna Avenue in Deltona, Florida.

8. In the property belonging to the undocumented foreign nationals, I observed that five of them were outfitted with identical cold weather gear. They each had what appeared to be new black-in-color winter coats with fur trimmed hoods, black gloves, black balaclavas, and insulated rubber boots. The other two foreign nationals had new looking boots, coats, hats, and gloves, but not identical to the others. I also observed in SHAND's property that he was in possession of a set of black gloves and a black balaclava that matched the gloves and balaclavas belonging to the five foreign nationals with matching cold weather clothing.

9. I learned that all the foreign nationals spoke Gujarati, a language spoken in Gujarat in western India. Most had limited or no English language speaking ability. I also know that there are significant Gujarati populations outside of India, including in Canada and the United States.

10. I reviewed a copy of a Florida driver's license, which SHAND had in his possession upon arrest. The license was issued by the State of Florida and showed SHAND's address as XXXX Vienna Avenue in Deltona, Florida. The driver's license number was SXXX-XXX-74-247-0. This number matched

the Enterprise rental car agreement, which listed 2470 as SHAND's partial driver's license number.

11. BPA Backes informed me that SHAND is a naturalized United States Citizen who was born in Jamaica and naturalized in 2010. BPA Backes stated that queries of Department of Homeland Security computer systems and coordination with Canadian law enforcement produced no records of SHAND lawfully crossing from the United States to Canada or Canada to the United States.

12. I reviewed a report written by BPA Christopher Oliver, who first encountered SHAND. BPA Oliver documented that he performed a traffic stop on a white-colored passenger van with Missouri license plates at approximately 8:30 am, less than one mile south of the U.S./Canadian border in a rural area between the official ports of entry at Lancaster, Minnesota and Pembina, North Dakota. That location is in the State of Minnesota, approximately seven miles northeast of St. Vincent, Minnesota. SHAND was driving the van, and there were two passengers inside, the aforementioned S.P. and Y.P. BPA Oliver asked for identification and determined that the passengers were undocumented Indian nationals, whereupon he arrested them on immigration charges. Supervisory BPA Chad Snyder arrived on the scene and arrested SHAND for a violation of Title 8, United States Code, Section 1324 – Bringing in and Harboring Certain Aliens.

13. While SHAND and the two Indian nationals were being transported to the Pembina Border Patrol Station in North Dakota, other Border Patrol agents discovered five additional Indian nationals approximately a quarter mile south of the Canadian border walking in the direction of where SHAND was arrested. Border Patrol determined that all were illegally present in the United States.

14. I attempted to interview SHAND, but upon being advised of his rights, SHAND declined to speak with law enforcement.

15. A driver of a snow removal truck reported to Border Patrol that he had encountered SHAND earlier in the morning of January 19th, in a white-colored passenger van stuck in a snow-filled ditch near where SHAND was later arrested. The driver pulled the van out of the ditch with his truck and spoke with SHAND. He stated SHAND told him he was on his way to Winnipeg, Manitoba, Canada to visit friends. The driver noticed two passengers in the van that he believed were of Indian or Pakistani descent.

16. Concerning the circumstances surrounding SHAND's arrest, I know that SHAND had driven a long distance from Minneapolis and was encountered driving in a rural area on a dirt road in an area far away from any services, homes, or ports of entry into Canada. He was driving through blowing snow and snow drifts. The weather was severe at the time, with high winds,

blowing snow, and temperatures well below zero. I understand that the area is also known by Border Patrol as a high incident area for human smuggling.

17. BPA Backes reported that there were recently three separate incidents of human smuggling that occurred at the same location where SHAND was arrested. BPA Backes himself had observed boot prints in the snow made by three individuals who had walked across the U.S./Canadian border at that location on January 12, 2022. BPA Backes said the three sets of boot prints were made by the same brand of boots and that the prints matched the brand of the types of boots worn by five of the seven foreign nationals arrested in the current smuggling event where SHAND was arrested. I observed photographs of the boot prints BPA Backes saw and they did appear to be the same tread style as the boots being worn by the arrested foreign nationals.

18. The two previous human smuggling events were discovered by Border Patrol Agents observing footprints in the snow. Two groups of four appeared to have walked across the border into the U.S. and were picked up by someone in a vehicle. The estimated dates of those two events were December 12 and December 22 of 2021. Related to the December 12th event, the Royal Canadian Mounted Police reported that a backpack was found at what was believed to be the drop-off point for the illegal border crossers. Inside the backpack was a price tag showing a price in Rupees (Indian currency).

19. The group of five Indian nationals found after SHAND's arrest had walked across the border expecting to be picked up by someone on the U.S. side, according to one of the five, whose name was V.D. V.D. estimated that his group walked approximately one kilometer south from where they were dropped off in Canada and had been walking around for approximately 11 ½ hours. V.D. was in possession of a backpack that did not belong to him. V.D. said that he was carrying the backpack for a family of four Indian nationals that had earlier been walking with his group. V.D. said the family was already at the drop-off location when he arrived. The backpack contained children's clothes, a diaper, toys, and some children's medication. V.D. said that his group had become separated from the family during the night, and he did not know where the family was.

20. Later on January 19, 2022, Border Patrol received a report from the Royal Canadian Mounted Police that four bodies were found frozen just inside the Canadian side of the international border. The dead bodies were tentatively identified as the family of four that was separated from V.D.'s group in the night.

21. Two of the surviving Indian nationals sustained serious injuries. A male adult and female adult were taken to the hospital for suspected frostbite. The male was later released from the hospital, but the female was life-flighted to a larger hospital and will likely require partial amputation of

one hand from exposure to extreme cold-weather conditions. The female also stopped breathing several times while being transported by Border Patrol.

22. The investigation into the death of the four individuals in Canada is ongoing along with an investigation into a larger human smuggling operation of which SHAND is suspected of being a part. For example, I know that one of the Indian nationals provided limited information to Border Patrol. He reported that he paid a significant amount of money to enter Canada from India under a fraudulently obtained student visa. He did not intend to study in Canada but rather to illegally enter the United States. He had crossed the border into the United States on foot and had expected to be picked up by an individual who would drive him to his uncle's residence in Chicago.

23. Based on these facts, I believe that that there is probable cause that Steve SHAND violated Title 8, United States Code, Section 1324(A)(1)(a)(ii) in that he knowing or in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, transported, and moved or attempted to transport and move such alien, to wit: S.P. and Y.P. within the United States by means of transportation or otherwise, in furtherance of such violation of law.

Further Your Affiant Sayeth Not.

                                               _____
                                               John D. Stanley, Special Agent
                                               Homeland Security Investigations

SUBSCRIBED and SWORN to before me by reliable electronic means (FaceTime and email) pursuant to Fed. R. Crim. P. 41(d)(3) on this 20th day of January, 2022.

_____
The Honorable Hildy Bowbeer
United States Magistrate Judge

10