UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-40 (JRT/LIB) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Steve Anothony Shand (2), | |
| Defendant. | |

---

Pursuant to a general assignment made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon the Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Motion to Suppress"). [Docket No. 83]. The Court held a Motions Hearing on May 9, 2024, regarding the Defendant's Motion to Suppress. (Minutes [Docket No. 95]).

At the Motions Hearing, the parties requested, and were granted, the opportunity to submit supplemental briefing. Upon the completion of that briefing, the parties' Motions were taken under advisement.

For the reasons discussed herein, the Court recommends that Defendant's Motion to Suppress, [Docket No. 83], be **DENIED**.

**I.      Background**

Defendant is charged with one (1) count of Conspiracy to Transport Aliens Causing Serious Bodily Injury and Placing Lives in Jeopardy in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(iii); one (1) count of Aiding and Abetting the Transport of Aliens in the United States Causing Serious Bodily Injury and Placing Lives in Jeopardy in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and

1324(a)(1)(B)(iii); one (1) count of Transportation of Aliens in the United States Causing Serious Bodily Injury and Placing Lives in Jeopardy in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(iii); and one (1) count of Transportation of Aliens in the United States For the Purpose of Commercial Advantage and Private Financial Gain in violation of §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). (Superseding Indictment [Docket No. 72]). Defendant has entered a plea of not guilty as to the counts arraigned against him in the Superseding Indictment. (Minutes [Docket No. 79]).

**II.      Defendant's Motion to Suppress. [Docket No. 83].**

Defendant seeks an Order of this Court suppressing all evidence obtained as a result of the traffic stop and search of van he was driving on January 19, 2022. (Def.'s Mot. [Docket No. 83]). In support of this request, Defendant argues that the initial stop of the vehicle was not supported by reasonable articulable suspicion. (See Def.'s Mem. [Docket No. 102] at 7–12).[1]

**A.  Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment. United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 1994).

---

[1] When initially filed, Defendant's Motion to Suppress asserted that law enforcement initiated the traffic stop without reasonable articulable suspicion, removed Defendant from the vehicle without constitutionally adequate justification, and searched the vehicle without probable cause. (See Def.'s Mot. [Docket No. 83]). In his supplemental memorandum, however, Defendant does not raise the latter two arguments. (See Def.'s Mem. [Docket No. 102]). Instead, Defendant now argues that law enforcement lack reasonable articulable suspicion to initiate the traffic stop, and thus, all evidence flowing from the traffic stop should be suppressed, including evidence obtained in the subsequent search of the vehicle and the statements received from the vehicle's occupants. (Id. at 7–12).

B.  Facts[2]

Border Patrol Agent Christopher Oliver ("Agent Oliver") has been a Border Patrol Agent for more than seventeen years. (Tr. 7).[3] Agent Oliver is assigned as a "resident agent" in Kittson County, Minnesota. (Tr. 10). As a resident agent with the United States Border Patrol, Agent Oliver lives in the community he is assigned to patrol so that he may become part of the community. (Tr. 10). Agent Oliver testified that the resident agent program is designed to help an agent liaison with the community to assist the agent in understanding when something is "out of place." (Tr. 10). Agent Oliver has resided in and been a resident agent for Kittson County for approximately fourteen years. (Tr. 11).

In December of 2021 and January 2022, Agent Oliver and other Border Patrol Agents began noticing a pattern of evidence near the area where 410th Street intersects with 180th Avenue in Kittson County indicating that individuals had recently used that area to illegally cross the border between Canada and the United States. (Tr. 16). Specifically, agents found "fresh footprints leading away from the Canadian border to that exact intersection." (Tr. 18). Over the course of three weeks, the agents discovered that the fresh footprints appeared on Wednesday of each week. (Tr. 18). After observing the fresh footprints on a weekly basis, the agent noticed that a similar boot print appeared each week. (Tr. 18–19). Agents also recovered a backpack from the area which bore a price tag that was labelled in rupees which Agent Oliver testified was significant as an indicator of human smuggling. (Tr. 19). Agent Oliver testified that the recurring footprints and the discovered backpack were indicative of an individual having selected the area

---
[2] The facts contained in this section are derived from the testimony of Border Patrol Agent Christopher Oliver at the May 9, 2024, Motions Hearing.
[3] Throughout this Report and Recommendation, the Court refers to the transcript of the May 9, 2024, Motions Hearing by the abbreviation "Tr." (Transcript [Docket No. 100]).

at the intersection of 410th Street and 180th Avenue as a location to illegally guide individuals across the border from Canada into the United States without proper authorization. (Tr. 18–20).

The area near the intersection of 410th Street and 180th Avenue is relatively isolated and remote with the roads in and around the area being largely either gravel roads or clay roads. (Tr. 15–19). Agent Oliver testified that during the winter months the intersection is usually unpassable because of accumulated snow drifts. (Tr. 16–19). The intersection is approximately three or four miles from Highway 75. (Tr. 44). The road to the west of the intersection turns into a clay road which "is allowed to plug in very early in the snow season, so very high drifts, no one drives it." (Tr. 17). There is one "semi-maintained" road heading north from the intersection of 410th Street and 180th Avenue to the Canadian border, but because it is mainly private property on this road, it is allowed to "plug in" early in the snow season thereby making it largely impassable. (Tr 17). The road heading east from the intersection has one resident with whom Agent Oliver is "pretty familiar," but the resident lives in California for the winter. (Tr. 17). Further along the eastward road are grain bins and an "old farm site." (Tr. 17). The only significant building near the intersection is an industrial gas pipeline pumping station which is located approximately one-half mile from the intersection of 410th Street and 180th Avenue. (Tr. 18).

On the morning of January 19, 2022, Agent Oliver began his patrol shift at approximately 7:00 a.m.; however, because there had been a large snowstorm the previous night, Agent Oliver and the other border patrol agents intended not to patrol the remote roads, which had not been cleared of snow, for fear of their vehicles becoming stuck in the snow. (Tr. 20–22). But Agent Oliver's supervisor informed him that despite the snowy conditions they needed to check the area near the intersection of 410th Street and 180th Avenue because January 19, 2022, was a

Wednesday, and the previously discovered footprints at the intersection had been discovered on the previous three Wednesdays. (Tr. 20–22).

As he proceeded to the intersection at issue, Agent Oliver was required to drive through a snow drift which was 10–15 feet wide and 2–3 feet tall when he drove from the highway onto the local road. (Tr. 22–25). Agent Oliver continued to have to drive through large snow drifts as he proceeded to the intersection of 410th Street and 180th Avenue. (Tr. 22–25). He estimated that the trip from his duty station to the intersection took approximately one hour and twenty minutes because of the weather compared to a typical trip which would have taken less than an hour. (Tr. 22–25).

As Agent Oliver approached the intersection of 410th Street and 180th Avenue from the south, he observed a large white panel van ("Subject Vehicle") turning north. (Tr. 24–27). The Subject Vehicle then performed a three-point turn in the intersection of 410th Street and 180th Avenue. (Tr. 24–27). After completing the three-point turn, the Subject Vehicle drove south at a rate of speed slower that Agent Oliver thought to be typical. (Tr. 24–27).

As Agent Oliver's patrol vehicle approached the Subject Vehicle, Agent Oliver observed three occupants inside the Subject Vehicle with two occupants in the front seats and one in the rear seat. (Tr. 24–27). Defendant was later identified as the driver of the Subject Vehicle. (Tr. 24–27, 31). Agent Oliver also observed that the Subject Vehicle had Missouri license plates. (Tr. 24–28).

Agent Oliver then initiated a traffic stop of the Subject Vehicle. After the Subject Vehicle stopped on the side of the road, Agent Oliver approach the vehicle and began interacting with the vehicle's occupants. (Tr. 27–38). During Agent Oliver's interaction with the Subject Vehicle's occupants, the three occupants provided conflicting answers to Agent Oliver's questions,

including questions regarding where the Subject Vehicle's occupants had come from, as well as, their destination. (Tr. 27–38). Ultimately, Defendant was placed under arrest, and the Subject Vehicle was searched. (Tr. 37–38). After Defendant was placed under arrest, at least five other individuals came out of the field adjacent to the location where the Subject Vehicle had been stopped; the Border Patrol agents suspected that these individuals had also illegally crossed the border from Canada into the United States. (Tr. 39–40).

**C. Discussion**

As observed above, Defendant seeks an Order of this Court suppressing all evidence obtained as a result of the traffic stop and search of the Subject Vehicle on January 19, 2022. (Def.'s Mot. [Docket No. 83]). In support of this request, Defendant argues that the initial stop of the vehicle was not supported by reasonable articulable suspicion, and therefore, according to Defendant, all evidence obtained as a result of the traffic stop, including evidence obtained in the subsequent search of the Subject Vehicle and statements received from the Subject Vehicle's occupants, must be suppressed. (See Def.'s Mem. [Docket No. 102] at 7–12).

It is well-established that law enforcement officers may make an investigatory stop of a vehicle if they have a reasonable and articulable suspicion of criminal activity. See, e.g., United States v. Tamayo-Baez, 820 F.3d 308, 312 (8th Cir. 2016); United States v. Hightower, 716 F.3d 1117, 1119 (8th Cir. 2013); United States v. Bustos–Torres, 396 F.3d 935, 942 (8th Cir. 2005). "Reasonable suspicion exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from the facts, reasonably warrant suspicion that a crime has been committed.'" Tamayo-Baez, 820 F.3d at 312 (quoting United States v. Givens, 763 F.3d 987, 989 (8th Cir. 2014)); United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008). The officer "must be able to articulate something more than an inchoate and unparticularized

suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations marks omitted); see Navarette v. California, 134 S. Ct. 1683, 1687 (2014). In forming reasonable suspicion, "officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Ortiz Monroy, 332 F.3d 525, 529 (8th Cir. 2003) (quoting United States v. Arvizu, 543 U.S. 266, 273 (2002)).

The inquiry into whether reasonable suspicion exists is an objective standard based on the information known to the officers at the time of the seizure. United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007) (quoting United States v. Maltais, 403 F.3d 550, 554 (8th Cir. 2005)); see Hughes, 517 F.3d at 1016.

In discussing the reasonable suspicion necessary for a border patrol agent conducting a "roving-patrol" of an international border to initiate a traffic stop near (but not at) a border between the United States and another county, the United States Supreme Court has held as follows:

> [B]ecause of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion.

United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975). "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." Id. at 885 (citing Terry v. Ohio, 392 U.S. 1, 27 (1968)).

In determining whether a border patrol officer had reasonable suspicion to initiate a "roving-patrol" traffic stop, the Court still evaluates the facts in light of the circumstances as a whole. Id. at 884–85; United States v. Cortez, 449 U.S. 411, 417 (1981). Among the factors a Court may consider in reviewing the totality of the circumstances in the context of a "roving-patrol" traffic stop are the characteristics of the area in which law enforcement encounters the vehicle, including the area's proximity to the border and the usual vehicle traffic patterns of the area; an officer's previous experience with illegal border crossings, including whether law enforcement had information about recent, unauthorized border crossings in the area; whether the driver displays erratic or evasive driving maneuverers; and the aspects of the vehicle itself. Brignoni-Ponce, 422 U.S. at 884–85. But "the essence of all that has been written is that the totality of the circumstance—the whole picture—must be taken into account." Cortez, 449 U.S. at 417.

In the present case, the totality of the circumstances demonstrates that Agent Oliver had the reasonable, articulate suspicion necessary to initiate the traffic stop of the Subject Vehicle on January 19, 2022. The fact that border patrol agents had recently discovered a pattern of evidence demonstrating that individuals had illegally crossed the border from Canada into Mexico at the exact location of the January 19, 2022, traffic stop, contributes significantly to the existence of reasonable, articulable suspicion necessary to stop the Subject Vehicle. See, e.g., Cortez, 449 U.S. at 419; Brignoni-Ponce, 422 U.S. at 885. The Subject Vehicle's proximity to the previously discovered evidence demonstrating a pattern of illegal border crossing is a strong indicator of the reasonable, articulable suspicion necessary to initiate a traffic stop of the Subject Vehicle.

The Subject Vehicle's proximity to the previously discovered evidence is not, however, the only basis of Agent Oliver's reasonable, articulable suspicion. Agent Oliver testified that the area in question is remote and isolated enough that, in his experience, he believed it would be implausible for an individual to find themselves in that area even if said person lost their way after leaving one of the nearest major roads. (Tr. 52). Moreover, Agent Oliver also testified that he found the Subject Vehicle to be out of place based on his familiarity with the area in question, traffic patterns for the area, and the area's residents. Agent Oliver's suspicion was further raised by the fact that the Subject Vehicle had a license plate from Missouri which indicated to Agent Oliver that the Subject Vehicle lacked a valid reason to be in the isolated and remote area near the intersection of 410th Street and 180th Avenue. Agent Oliver testified that he found it significant that the Subject Vehicle appeared to have a large seating capacity because vehicles with such a capacity could be used to smuggle persons or goods.[4] These circumstances and observations, when considered within the totality of the circumstances, gives rise to reasonable, articulable suspicion that the Subject Vehicle contained persons who had illegally crossed the border between Canada and the United States. See United States v. Brignoni-Ponce, 422 U.S. 873, 884–85 (1975); United States v. Jaime-Barrios, 494 F.2d 455, 456 (9th Cir. 1974).

Agent Oliver also testified that he made certain observations which led him to eliminate the Subject Vehicle as part of even the limited vehicular traffic which could occur in the area. The lack of insignia or signage on the Subject Vehicle indicated to Agent Oliver that the Subject

---

[4] Defendant asserts that Agent Oliver's belief that the Subject Vehicle had a large seating capacity cannot be the basis of the reasonable, articulable suspicion to initiate a traffic stop of the Subject Vehicle because Agent Oliver, according to Defendant, did not learn this information until after he stopped the Subject Vehicle. Defendant assertion is not, however, born out by the record now before the Court. Although Agent Oliver did not verify the precise number of seats inside the Subject Vehicle until after he initiated the traffic stop and approached the Subject Vehicle, he made observations regarding the size and potential passenger capacity of the Subject Vehicle prior to initiating the traffic stop, and he specifically noted that although he could only see three persons in the Subject Vehicle prior to the traffic stop, he had concerns regarding other persons who could be concealing themselves inside the Subject Vehicle. (Tr. 26–27).

Vehicle did not belong to a contractor or repairperson. This indication was bolstered by Agent Oliver's observation of a passenger seating in the back portion of the Subject Vehicle which indicated to Agent Oliver that the Subject Vehicle did not have a cage or tool compartment like one would typically find in a contractor's vehicle. Agent Oliver also testified that he believed the Subject Vehicle was not associated with the nearby gas pipeline pumping station because at the time Agent Oliver observed the Subject Vehicle the Subject Vehicle would have already had to twice pass the entrance to the gas pipeline pumping station. (Tr. 25). Agent Oliver further testified that in his fourteen years patrolling the relevant area he had never observed a vehicle of the same type as the Subject Vehicle (a large van without an enclosed tool area) bearing an out of state license plate in the area near 410th Street and 180th Avenue. (Tr. 56–57). Each of these observations lends further credence to the existence of reasonable, articulable suspicion necessary to initiate a traffic stop of the Subject Vehicle. See Brignoni-Ponce, 422 U.S. at 884; Jaime-Barrios, 494 F.2d at 456.

In summation, the totality of the circumstances in the present case demonstrates that at the time Agent Oliver initiated the traffic stop of the Subject Vehicle, he had the requisite reasonable, articulable suspicion necessary to make an investigation stop of the Subject Vehicle. Put differently, the previously discovered evidence combined with Agent Oliver's observations, viewed through the lens of his training and experience, could lead him reasonably to suspect that the Subject Vehicle contained persons who had illegally crossed the border from Canada to the United States without proper authorization. Thus, Agent Oliver's investigatory stop of the Subject Vehicle on January 19, 2022, was constitutionally permissible.

Therefore, the undersigned recommends that Defendant's Motion to Suppress, [Docket No. 83], be **DENIED**.

### III. Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion to Suppress, [Docket No. 83], be **DENIED**.

Dated: July 23, 2024                             s/Leo I. Brisbois
                                                 Hon. Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.