UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

                                                      Crim. No. 22-40(2) (JRT/LIB)

              Plaintiff,

v.

STEVE ANTHONY SHAND,                **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

              Defendant.

---

Laura Provinzino and Michael Patrick McBride, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Aaron J. Morrison, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant.

Defendant Steve Shand was indicted on several counts for illegally transporting unauthorized persons across the border between the United States and Canada. Ahead of trial, Shand filed a motion to suppress the direct and derivative fruits of a traffic stop effected near the border on January 19, 2022. Magistrate Judge Leo Brisbois issued a Report and Recommendation ("R&R") recommending the Court deny Shand's motion. Shand objects to the Magistrate Judge's factual characterization of a "pattern" of footprints and his application of the reasonable suspicion standard employed in these traffic stops. While the Court will sustain the factual objection, it will overrule the

remaining objections and adopt the balance of the R&R, denying Shand's Motion to Suppress.

## BACKGROUND

### I. FACTS

The R&R extensively reviewed the factual background, and apart from one minor detail, the parties do not object. (R. & R. at 3–6, July 23, 2024, Docket No. 109.)[1] Having accepted the factual change requested by Shand, the Court will briefly summarize the facts relevant to Shand's substantive objection.

From December 2021 to January 2022, Border Patrol Agent Christopher Oliver ("Agent Oliver") and other agents began investigating suspicious activity in Kittson County, Minnesota that culminated in Shand's arrest on January 19, 2022. (Tr. Mot. Hr'g at 16, 37, May 24, 2024, Docket No. 100.) Agent Oliver has worked and resided in Kittson County for fourteen years patrolling remote areas near the border to investigate illegal crossings. (*Id.* at 8, 12, 15.) Agent Oliver also received formal education in criminal justice

---

[1] The R&R described agents finding fresh footprints "the previous three Wednesdays" leading up to Shand's arrest. (R. & R. at 5, July 23, 2024, Docket No. 109.) Shand objects to this characterization, insisting instead the motion hearing testimony only showed that fresh footprints were found "three out of four Wednesdays leading up to the arrest," rather than three weeks in a row. (Obj. at 4, Aug. 6, 2024, Docket No. 110; Tr. Mot. Hr'g at 18, May 25, 2024, Docket No. 100.) Shand is correct, and the factual record will be changed to reflect as much. However, this finding does not change the Court's overall conclusion that the Motion to Suppress should be denied.

and attended a months-long academy with specialized education in immigration and nationality law. (*Id.* at 8–9.),

Agent Oliver and his colleagues became suspicious of illegal crossings after observing a pattern of footprints occurring with some regularity on Wednesdays near the intersection of 410th Street and 180th Avenue ("the intersection"). (*Id.* at 18–19.) Recovering a backpack with a price tag in rupees nearby reinforced these suspicions. (*Id.* at 19.)

Despite the particularly treacherous conditions the morning of January 19, 2022, Agent Oliver ventured out to observe if the pattern of fresh prints at the intersection on Wednesdays continued. (*Id.* at 22–24.) After driving through snow drifts, Agent Oliver arrived at the intersection and came upon a large white panel van with Missouri plates. (*Id.* at 24–27.)

A number of details about the van immediately stuck out to Agent Oliver. First, the van turned around at the precise intersection where the footprints had been discovered. (*Id.* at 26.) Furthermore, the fact that the van turned around at that location meant business at the nearby gas plant or farm were unlikely. (*Id.* at 25.) Additionally, Agent Oliver thought the van travelled slower than expected, and it had out-of-state license plates. (*Id.*) Agent Oliver also described no markings on the van and three occupants in the vehicle, which suggested it was not a utility van but more likely a passenger van with significant seating. (*Id.* at 26.)

At this point, Agent Oliver initiated a traffic stop of the van. (*Id.* at 29.) The driver identified himself as Shand and provided a Florida driver's license. (*Id.* at 30.) The other passenger produced Indian passports lacking any markings or visa identifiers. (*Id.* at 33, 35.) The passengers inconsistently answered Agent Oliver's questions, including about where the occupants had come from and where they were going. (*Id.* at 27–38.) Shand indicated he had gotten lost on his way to Winnipeg. (*Id.* at 30.) The other passengers stated they were coming from Winnipeg. (*Id.* at 33.) Eventually, Agent Oliver arrested Shand, and other agents searched the van. (*Id.* at 37–38.) After the arrest, at least five other individuals came out of the field near the intersection. (*Id.* at 39–40.)

## II.   PROCEDURAL HISTORY

A grand jury indicted Shand on multiple charges surrounding the transportation or attempted transportation of unauthorized persons into the United States. (*See* Superseding Indictment at 3–6, Mar. 21, 2024, Docket No. 72.) Ahead of trial, Shand filed a Motion to Suppress seeking to suppress all evidence obtained from the July 19, 2022 traffic stop and subsequent search of the van. (Def.'s Mot., Apr. 17, 2024, Docket No. 83.) In support of his request, Shand argues the initial stop of the vehicle was not supported by a reasonable, articulable suspicion. (*Id.* at 1.) The Magistrate Judge issued an R&R recommending the Court deny Defendant's motion. (R. & R. at 11.) Shand filed timely objections to the R&R, which included both the factual objection discussed briefly above and a broader substantive objection to the recommendation that the motion to suppress

be denied. (Obj. at 9–15, Aug. 6, 2024, Docket No. 110.) The United States responded to those objections, arguing Agent Oliver had the reasonable suspicion necessary to perform the initial traffic stop. (Resp., Aug. 20, 2024, Docket No. 111.)

## DISCUSSION

### I. STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews *de novo* a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

### II. ANALYSIS

Shand substantively objects only to the Magistrate Judge's evaluation of the totality of the circumstances in his reasonable-suspicion inquiry. Ultimately, Shand believes that Agent Oliver stopped Shand's van based solely on its presence in a suspicious location, which alone cannot constitute reasonable, articulable suspicion, so the evidence

must be suppressed.  Under *de novo* review, however, the Court finds that Agent Oliver could reasonably suspect that Shand was smuggling people into the United States illegally, so it will overrule the substantive objection, adopt the R&R, and deny Shand's Motion to Suppress.

"The Fourth Amendment permits investigative traffic stops when law enforcement has reasonable suspicion of criminal activity."  *United States v. Lopez-Tubac*, 943 F.3d 1156, 1159 (8th Cir. 2019) (quoting *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016)).  "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed."  *Id.* (quoting *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014)).

The Supreme Court extended Fourth Amendment protections to roving patrols near, but not at, borders—requiring agents to have "specific articulable facts . . . that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country" before stopping a vehicle.  *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).  The inquiry is an objective one, based on the information known to the officers at the time of the stop.  *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).  For roving patrols, courts may consider the characteristics of the area in which the agents encounter a vehicle, its proximity to the border, the usual patterns of traffic on the particular road, agents' previous experience with illegal border-crossing traffic, recent

border crossings in the area, the driver's behavior, and aspects of the vehicle itself. *Brignoni-Ponce*, 422 U.S. at 884–85.  The agent may use his or her expertise to inform the factual observations.  *Id.* at 885.  No one factor is dispositive but rather requires a totality of the circumstances analysis.  *Id.* at 885–86.

Here, the totality of the circumstances indicates that Agent Oliver had a reasonable suspicion of illegal activity when he conducted the traffic stop of the van.  The intersection itself presented evidence of illegal border crossing, namely the frequent fresh footprints just a half mile from the United States-Canada border and the backpack with a price tag in rupees.  But location alone did not serve as the basis for Agent Oliver's suspicion of smuggling.

On January 19, 2022, Agent Oliver articulated multiple other suspect behaviors. First, the treacherous winter conditions raised suspicion that any vehicle was on the road at all.  While Shand is right that some vehicles travel those roads for legitimate purposes, Agent Oliver explained why, in his experience, this vehicle did not fit the mold.  The large van was devoid of any markings and had a passenger in the back seat, making it unlikely, in Agent Oliver's opinion, that it was a utility vehicle.  The fact that the van turned around at the intersection led Agent Oliver to believe it was not conducting business at the nearby gas plant or farm.  The van's Missouri license plates only added to the suspicion that the van was out of place in this remote corner of Minnesota.

Taken as a whole, this evidence amounted to more than a mere hunch that illegal activity was afoot. Because Agent Oliver had the requisite reasonable suspicion, based upon articulable facts, for a traffic stop of the van, the Court will overrule Shand's substantive objections, adopt the R&R, and deny Shand's Motion to Suppress.

## CONCLUSION

Shand argues that evidence stemming from the initial traffic stop of the van should be suppressed because the search violated his Fourth Amendment rights. The parties agree that the standard is reasonable suspicion, but contrary to Shand's position, several facts indicate that Agent Oliver in fact had such a reasonable suspicion. As such, the Court will adopt the Magistrate Judge's R&R and deny the Motion to Suppress.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objection to the Report and Recommendation [Docket No. 110] is **SUSTAINED in part and OVERRULED in part** as follows:

   a. Defendant's factual objection is sustained, and the record will be corrected accordingly,

   b. Defendant's substantive objections to the application of the reasonable suspicion standard are overruled;

2. The Magistrate Judge's Report and Recommendation [Docket No. 109] is **ADOPTED** with the factual change noted above; and

3. Defendant's Motion to Suppress [Docket No. 83] is **DENIED**.

DATED: September 5, 2024                 \_\_\_\_s/John R. Tunheim\_\_\_\_\_
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                              United States District Judge