## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## Criminal No. 22-40 (JRT/LIB)

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

(1) HARSHKUMAR RAMANLAL PATEL
a/k/a "Dirty Harry,"
a/k/a Harry Patel,
a/k/a Param Singh,
a/k/a Haresh Rameshlal Patel,
a/k/a Harshkumar Singh Patel, and
(2) STEVE ANTHONY SHAND,

      Defendants.

**GOVERNMENT'S
RESPONSE TO
DEFENDANT SHAND'S
MOTIONS IN LIMINE
(ECF 135)**

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Assistant United States Attorney Michael P. McBride and Trial Attorney Ryan Lipes, respectfully submits this omnibus response to Defendant Steve Shand's Motions in Limine (ECF 135).

## I.  <u>Response to Motion to Exclude Evidence</u>

Defendant Shand moves this Court to exclude evidence he argues was untimely disclosed under Federal Rule of Criminal Procedure 16. Because the

evidence was timely disclosed, the United States acted in good faith, and the defendants have suffered no prejudice, his motion should be denied. Alternatively, to the extent the Court believes the defendants require more time to prepare, a continuance is the appropriate remedy.

## Factual Background

On January 19, 2022, Shand was arrested while he waited for Indian migrants to cross the U.S./Canada border during a blizzard. The situation was a life-threatening emergency in the extreme cold and a panoply of U.S. and Canadian law enforcement agents and agencies became involved in the rescue and investigation operations. Although Shand was charged by complaint on January 20, 2022 (ECF 1), the investigation continued into the large, transnational, and complex human smuggling ring of which he was a part. Indeed, the investigation continues to this day.

On March 1, 2022, the government made its initial disclosures in this case, pursuant to the Court's scheduling order. (ECF 14, Exhibit 1). Included in this initial disclosure were many reports from law enforcement agents regarding the medical conditions of two migrants who suffered hypothermia with one also suffering frostbite. On September 1, 2022, the government disclosed additional media, including an extraction of Shand's phone. (Exhibit 2). Pursuant to its ongoing discovery obligations, the government made additional disclosures on April 3, 2024, after the Grand Jury returned the First

Superseding Indictment. (Exhibit 3). During this time, the government and Shand engaged in two proffer sessions—in March 2022 and February 2023—and worked toward a resolution in this case. Discussions over a mutual resolution continued into June 2024.

In June 2024, the two undersigned attorneys joined the prosecution team in this case, replacing departing counsel. On July 10, 2024, this Court set the current trial date. (ECF 107). Shortly thereafter the government submitted its formal Mutual Legal Assistance Treaty request through the Department of Justice's Office of International Affairs to secure witnesses and evidence held by Canadian authorities for use at trial. This included crime scene photos, medical examiner reports, medical examiner witness identities, and Royal Canadian Mounted Police (RCMP) reports. Despite constant attention, the government did not receive Canadian materials until November 1, 2024, which it disclosed to the defendants the same day. (Exhibit 4). Throughout this time, the government stayed in regular contact with defense counsel, informing them of anticipated additional disclosures.

The investigation into this trans-national human smuggling operation continued, resulting in several rounds of additional Grand Jury subpoenas that were issued in August 2024. Nearly 5,000 pages of returns for these subpoenas arrived between August 12 and September 9, 2024. They were processed and evaluated for their materiality in this case as they arrived. On October 18,

3

2024, the government disclosed these returns in addition to law enforcement reports pertaining to the subpoenas.

On September 12, 2024, the undersigned counsel traveled to Seattle, Washington, to conduct a proffer with a potential witness and to communicate with counsel from the U.S. Attorney's Office (USAO) for the Western District of Washington (WDWA). Based on information discovered during this trip, counsel requested certain material from the WDWA, which was related to the instant case. Over the next month, the government received several rounds of records from the WDWA, including more than 200 gigabytes of data from phones seized during that office's investigation. This material was analyzed for its relation to this case and processed for discovery promptly. The material included sensitive information, requiring a protective order, which the government applied for. (ECF 115). Much of the material from the WDWA was disclosed on October 3, 2024, in addition to medical records the government received in June and July 2024. (Exhibit 5). The remainder was disclosed on October 18, 2024—all just a few weeks after it was received. (Exhibit 6).

Finally, as the government prepared for trial by interviewing witnesses and reviewing the evidence, a handful of law enforcement reports were found that had not previously been disclosed. Pursuant to its ongoing discovery obligations, the government disclosed these reports as they were identified.

**Argument**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires the United States to give a defendant the opportunity to inspect or copy "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" when the United States is in possession of such items and (1) it is material to preparing the defense; (2) the United States intends on using such item in its case-in-chief; or (3) the item is from or belongs to the defendant. Rule 16 further places a continuing duty to promptly disclose such information when it is discovered before or during trial. Fed. R. Crim. P. 16(c). The government's discovery obligations are ongoing.

"When a party fails to comply with Rule 16, the Court has four remedial options: (1) order the discovery or inspection to occur; (2) grant a trial continuance; (3) exclude the undisclosed evidence; or (4) 'enter any other order that is just under the circumstances.'" *United States v. Dornsbach*, No. 22-CR-00048-DMT-CRH, 2023 WL 3496495, at *2 (D. Minn. May 17, 2023) (quoting Fed. R. Crim. P. 16(d)(2)). "When choosing a remedy, the Court looks to whether the United States acted in bad faith, the reasons for the delay, whether the defendant suffered any prejudice, and whether a lesser sanction is appropriate to ensure the Government's future compliance." *Id.* (citing *United States v. Streb*, 36 F.4th 782, 787 (8th Cir. 2022)).

To establish a *Brady* violation, a defendant must show that the government suppressed exculpatory evidence that was material either to guilt or to punishment. *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). Such evidence "is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013) (citing *Kyles v. Whitley*, 514 U.S. 419, 433–34, (1995); *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008)). Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial. *See, e.g.*, *Almendares*, 397 F.3d at 664 (disclosure at trial was not too late); *United States v. Spencer*, 753 F.3d 746, 748 (8th Cir. 2014) (same); *United States v. Jones*, 74 F.4th 941, 952 (8th Cir. 2023) ("We discern no Brady violation because Jones has not identified on appeal any evidence he was unable to use at trial, which ultimately took place in December 2021").

As an initial matter, Shand does not raise a *Brady* violation. Rather he objects to the timeliness of the government's disclosures. As detailed above, the government took great pains to ensure disclosures were made on a rolling basis as items of evidence were gathered. This case involves a multi-national investigation into a complex human smuggling ring that took migrants from India to Canada before being smuggled into the United States. The

investigation is ongoing. Consequently, new evidence has been regularly received, processed, and timely disclosed.

Nearly all the discovery Shand now complains of was gathered as a result of either 1) Grand Jury subpoenas issued in August 2024, or 2) material from the WDWA received in late September and early October 2024. In both cases, the large volume of material was processed, evaluated for its relation to this case, and disclosed within a few short weeks of its receipt. The Canadian law enforcement materials Shand cites were disclosed the same day they were received. Put simply, the government did not sit on evidence; it timely disclosed it.

Even if some materials were delayed, the proper remedy is a continuance, not exclusion. Shand's chief complaint appears to be that medical records relating to two of the Aliens he was smuggling were disclosed later than expected. The records were received by law enforcement on June 14 and 21, 2024. They were disclosed on October 3, 2024, still seven weeks before trial. To the extent this represents a delay in disclosure, the delay was not done in bad faith. Counsel turned over in June 2024—contemporaneous with receiving the medical records. Any delay was caused by new counsel getting up to speed on the state of the evidence, not intentional withholding.

Importantly, there can be no claim of surprise at the content of the records. Numerous reports were turned over in the initial disclosures on

March 1, 2022, discussing the two aliens' medical status. Specifically, that they were taken to Kittson Memorial Hospital suffering from hypothermia and frostbite, requiring one alien to be flown to Regions Hospital in St. Paul, Minnesota. Indeed, bates numbers 000001-000002 reported on an interview of one of these individuals at the hospital. Recordings of their interviews were also disclosed in the first round of disclosures. Even if there was a delay in disclosure from the end of June to the beginning of October, the government acted in good faith and the defendants have suffered no prejudice. To the extent that seven weeks is too little time to digest the records, a continuance is the appropriate remedy—not exclusion.

## II. Response to Motion for Notice of Intent to Admit Shand's Proffer Statements

Defendant Shand gave two statements to the government pursuant to written proffer agreements in March 2022 and February 2023. The agreements specified the circumstances in which Shand's statements could be used at trial. Relevant to this motion, Shand agreed:

> (3) In the event your client is ever a witness in any trial or presents evidence through other witnesses and your client's statements or that evidence contradicts statements made in your client's debriefing(s), the government may cross-examine your client and other witnesses concerning any statements or other information provided by your client during the debriefing(s). Evidence regarding such statements or other information may also be introduced in rebuttal.

Consistent with these terms, the government will not offer any statements made pursuant to these agreements in its case in chief. However, should Shand open the door by testifying, or presenting evidence through other witnesses, that is contrary to his statements, the government may seek to introduce them. If the government believes Shand has opened the door, it will notify the Court and counsel outside the presence of the Jury before introducing any of Shand's statements.

### III. <u>Response to Motion to Exclude Shand's Statements</u>

Fed. R. Evid. 801(d)(2)(A) permits the introduction of an opposing party's out-of-court statements as non-hearsay. Defendant Shand seeks to exclude all opposing party statements arguing Fed. R. Evid. 801(d)(2)(A) violates his Fifth and Sixth Amendment rights. Because opposing party statements are admissible under the rule and are plainly not compelled speech, the motion should be denied.

Shand cites no law in support of his motion because there is none. The Fifth Amendment's prohibition on compelled speech prevents the government from coercing an involuntary statement out of a defendant and then using the statement to convict the defendant. *See e.g. Miranda v. Arizona,* 384 U.S. 436 (1966). It has never prevented the admission of voluntary statements made by the defendant in the absence of any government involvement. This Court

should not accept Shand's invitation to overturn a firmly-rooted exception to the rule against hearsay.

## IV.  Response to Motion for Sequestration

The government does not oppose Shand's motion for sequestration and intends to have Homeland Security Investigations Special Agent Manuel "Jimmy" Jimenez sit at counsel table throughout trial.

## CONCLUSION

For these reasons, Defendant Shand's motions in limine should be denied.

Dated: November 6, 2024       Respectfully submitted,

ANDREW M. LUGER
United States Attorney

By:   */s/ Michael P. McBride*
Michael P. McBride
Assistant United States Attorney
MN Bar No. 0397292

Ryan Lipes
Trial Attorney
U.S. Department of Justice
N.Y. Bar No. 5404843
(202) 514-4715
Ryan.Lipes@usdoj.gov